**RECORD NO. 16-1063**

**IN THE**

# United States Court of Appeals
**FOR THE FOURTH CIRCUIT**

GORDON BEASLEY,

*Plaintiff - Appellant,*

JANET BEASLEY,

*Plaintiff,*

v.

RED ROCK FINANCIAL SERVICES, LLC;
RED ROCK VIRGINIA, LLC,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

## RESPONSE BRIEF OF APPELLEES

Virginia M. Sadler
Padralc K. Keane
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030-5117
(703) 246-0900

*Counsel for Appellees*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-1063 Caption: Gordon Beasley v. Red Rock Financial Services, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Red Rock Financial Services, LLC
(name of party/amicus)

who is Appellee, makes the following disclosure:
(appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
Red Rock Financial Services, LLC is 100% held by FirstService Residential, Nevada, LLC, which is 100% held by FSRM (NV), Inc., which is 100% held by FirstService Residential, Inc., which is 97.6% held by FirstService CAM Holdings, Inc., which is 100% held by FirstService Corporation - a public corporation traded on NASDAQ and the Toronto Stock Exchange.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

None other than the entities identified in response to No. 2, above.

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ______________________ Date: 2/4/2016

Counsel for: Red Rock Financial Services, LLC

## CERTIFICATE OF SERVICE

**************************

I certify that on 2/4/2016 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ernest P. Francis
Ernest P. Francis, LTD
505 Wythe Street
Alexandria, Virginia 22314
Counsel for Appellant
(Via CM/ECF)

______________________ (signature)

2/4/2016 (date)

07/19/2012
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-1063 Caption: Gordon Beasley v. Red Rock Financial Services, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Red Rock Virginia, LLC
(name of party/amicus)

who is Appellee, makes the following disclosure:
(appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
Red Rock Virginia, LLC is 100% held by FirstService Residential, Nevada, LLC, which is 100% held by FSRM (NV), Inc., which is 100% held by FirstService Residential, Inc., which is 97.6% held by FirstService CAM Holdings, Inc., which is 100% held by FirstService Corporation - a public corporation traded on NASDAQ and the Toronto Stock Exchange.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

None other than the entities identified in response to No. 2, above.

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ______________________ Date: 2/4/2016

Counsel for: Red Rock Virginia, LLC

## CERTIFICATE OF SERVICE

**************************

I certify that on 2/4/2016 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ernest P. Francis
Ernest P. Francis, LTD
505 Wythe Street
Alexandria, Virginia 22314
Counsel for Appellant
(Via CM/ECF)

______________________ (signature) 2/4/2016 (date)

# TABLE OF CONTENTS

**Page**


CORPORATE DISCLOSURES

TABLE OF AUTHORITIES............................................... i

I. STATEMENT OF CASE AND FACTS........................... 1

II. PROCEDURAL HISTORY......................................... 2

III. SUMMARY OF ARGUMENT ..................................... 5

IV. ARGUMENT ........................................................ 10

A. The District Court's Ruling on the Motion for Judgment as a Matter of Law Should be Upheld .......... 10

1. Standard of Review ..................................10

2. Appellant Produced No Evidence to Establish That He Sustained an Injury..........................11

B. The District Court Did Not Err in Granting Summary Judgment to Appellee on Count VII of the Complaint ...14

1. Standard of Review .................................. 14

2. Appellant Seeks to Add Facts to His Complaint Through His Briefs Before the District Court and on Appeal ........................................16

3. The Services Provided Had a Value..................17

C. The District Court Properly denied Appellant's Motion for Summary Judgment on the *Bona Fide* Error Defense ........................................................ ..18

1. A Defendant Need Not Admit a Violation to Assert the *Bona* Fide Error Defense……………19

2. Defendant Has an Abundance of Evidence to Demonstrate that It Maintained Procedures Reasonably Adapted to Avoid Any *Bona Fide* Error……………………………………………… 24

3. Any Error Would Have Had No Impact on the Outcome at Trial……………………………… 25

D. The Court's Exclusion of a Stipulation as to Violation of FDCPA in a Prior Matter Was Correct ……..26

E. The Court's Refusal to Compel Production of Attorney-Client Privileged Documents was Appropriate……………………………………………… 31

V. CONCLUSION …………………………………………………... 40

VI. STATEMENT AS TO ORAL ARGUMENT………………….. 41

CERTIFICATE OF COMPLIANCE (FRAP 32(a)(7)(b)(c)) …………42

CERTIFICATE OF SERVICE ……………………………………… 43

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................ 15

*Bieter Co.*, 16 F.3d 929 (8th Cir. 1994)............................................. 35

*Calvert v. Allessi & Koenig*, 2013 WL 3833053 (D. Nev. 2013)........ 29

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). .............................. 15,16

*In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001)................................................................... 36

*Cortel Va. LLC v. Verizon Va., LLC*, 752 F.3d 364 (4th Cir. 2014) ... 15

*Digital Vending Servs. Int'l v. Univ. of Phoenix*, 2013 WL 1560212, *7 (E.D. Va. 2013).......................................... 34, 35, 36

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) ...................................................................... 35

*Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 1840 (4th Cir. 1998) ...................................................................... 16

*Erdman v. Preferred Research, Inc.*, 852 F.2d 788 (4th Cir. 1988).... 31

*Export-Import Bank v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005)............................................................. 37

*Fought v. Hayes Wheels Inter., Inc.*, 101 F.3d 1275 (8th Cir. 1996)... 10

*In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454 (E.D. Pa. 2012) ... 37

*Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194 (4th Cir. 2005)................................................................... 15

**CASES** **PAGE**

*Garraghty v. Jordan*, 830 F.2d 1295 (4th Cir. 1987) .......................... 26

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009) .. 23

*Koon v. United* States, 518 U.S. 81 (1996)......................................... 25

*Kort v. Diversified Collection Servs.*, 394 F.3d 530 (7th Cir. 2005)........................................................................... 23

*LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134 (4th Cir. 1986), *cert. denied*, 479 U.S. 818 (1986)............................... 32

*LG Elecs., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958 (N.D. Ill. 2009) ........................................................................ 37

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922 (4th Cir. 1995) ................................................................ 32

*Montgomery v. Huntington Bank*, 346 F.3d 693(6th Cir. 2003) ........ 12

*Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119 (4th Cir. 2014)........................................................................... 19

*Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed. Appx. 254 (4th Cir. 2012)............................................................ 11, 12

*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014)........................................................... 19, 20, 21, 22

*Sayyed v. Wolpof & Abramson*, 485 F.3d 226 (4th Cir. 2007)............ 12

*Shinseki v. Sanders*, 556 U.S. 396 (2009) .......................................... 26

*Sibersky v. Goldstein*, 155 Fed. Appx. 10 (2nd Cir. 2005)................... 12

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) ........... 26

**CASES** **PAGE**

*Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645 (4th Cir. 2002)........ 15

*Warren v. Sessoms & Rogers, Inc.*, 676 F.3d 365 (4th Cir. 2012)........ 20,21, 22

*Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647 (6th Cir. 1994)........ 12

*Upjohn Co. v. United States*, 449 U.S. 383 (1981)........ 34, 35

*U.S. v. Anthony*, 88 F.3d 1369 (4th Cir. 1996)........ 38

*U.S. ex. rel. Fry v. The Health Alliance of Greater Cincinnati*, 2009 WL 5033940 (S.D. Ohio 2009)........ 37

*U.S. v. Graf*, 610 F.3d 1148 (9th Cir. 2010)........ 35

*United States v. Lentz*, 419 F. Supp. 2d 820 FN 11 (E.D. Va. 2005)........ 33

*U.S. v. Meyers*, 402 Fed. Appx. 844 (4th Cir. 2010)........ 26

*United States v. Penello*, 668 F.2d, 789 (4th Cir. 1982)........ 26

*U.S. v. Schwimmer*, 892 F.2d 237 (2nd Cir. 1989)........ 39

*United States v. Stitt*, 250 F.3d 878 (4th Cir. 2001)........ 26

**Federal Statutes**

15 U.S.C. § 1692a........ 12

15 U.S.C. § 1692e........ 11

15 U.S.C. § 1692k(a)........ 20, 28

**PAGE**

15 U.S.C. § 1692k(b)(1) .......... 27, 28

15 U.S.C. § 1692k(c) .......... 19

28 U.S.C. § 2111 .......... 25

**Rules**

Fed.R.Civ.P. 8(d)(3) .......... 23

Fed.R.Evid. 404(b)(2) .......... 30

## I. STATEMENT OF CASE AND FACTS

The Complaint in this action alleged that Gordon Beasley owns property located at 16614 Reservoir Loop in Dumfries, Virginia. (App. 45, ¶2.) Mr. Beasley further alleged that on September 26, 2013, the defendants, Red Rock Virginia, LLC ("RRVA") and Red Rock Financial Services, LLC ("RRFS") sent a letter to his attorney, Ernest Francis. (App. 46, ¶9.) Based on the language in the letter, Mr. Beasley sought to recover under various provisions of the Fair Debt Collection Practices Act ("FDCPA" or "the Act") for statutory and actual damages including emotional and mental distress. (App. 46, ¶ 10 & App. 53.) Despite these contentions, Mr. Beasley put on no evidence at trial to support any connection between himself and the September 26th letter. Mr. Beasley declined to testify at trial. The September 26th letter was addressed to Ernest Francis and makes no reference to Gordon Beasley. (App. 56.) Mr. Beasley offered no evidence at trial that Mr. Francis was his attorney in September 2013. Mr. Beasley further offered no evidence that he received the letter, knew of the contents or was ever aware of the letter's existence. (App. 116.) Mr. Beasley likewise offered no evidence of any connection to Janet Beasley, the co-plaintiff in the action. Thus, at the close of Gordon Beasley's case, there was no evidence to support any connection to the September 26th letter.

## II. PROCEDURAL HISTORY

Gordon Beasley originally filed his Complaint in Arlington County Circuit Court. The named defendants in this action removed the case to the United States District Court for the Eastern District of Virginia where an identical action filed by Janet Beasley was pending following removal of the case from Fairfax County Circuit Court. The parties agreed to consolidate the actions and moved to consolidate. The District Court consolidated the actions for all purposes including discovery. (App. 67 – 68.) During the course of discovery, Appellant's counsel issued a subpoena to the Princeton Woods Addition Homeowner's Association ("HOA") to obtain various documents relating to the account associated with the Reservoir Loop Property. Counsel for the HOA objected to the subpoena on privilege grounds and produced redacted portions of the requested documents. (App. 93.) Appellant's counsel then sought the same documents through document requests to the defendants. (*Id.*) Appellee and its co-defendant objected to the requests on privilege grounds and produced a privilege log as well as the documents in redacted form. Counsel for the Appellant filed a motion to compel and the magistrate judge heard oral argument on the issue. Following oral argument, the parties were directed to file additional briefs. Ultimately, the magistrate judge concluded that the Defendants were the functional equivalent of the HOA's collections department and that the privilege was not waived when the

relevant documents were provided to RRFS. (App. 139 – 140.) Appellant's counsel appealed the decision to the District Court Judge who upheld the Magistrate Judge's ruling. (App. 338.)

Prior to trial, Plaintiffs and Defendants filed motions for summary judgment. Plaintiffs moved for summary judgment on the grounds that defendants had failed to concede a violation of the FDCPA and therefore were precluded from asserting the *bona fide* error defense. Defendants moved for summary judgment on various claims. The District Court denied Plaintiffs' Motion and granted Defendants' Motion in part. In response to Plaintiff's Motion, the District Court concluded that the burden of proof for proving a violation did not shift to the defendant in a FDCPA case when the defendant seeks to assert an the *bona fide* error affirmative defense. With respect to the Motion filed by Defendants and relevant to this appeal, the District Court granted the Motion with respect to Count VII concluding that "the letter concerning the Plaintiff's contingent future liability for the HOA's cost of collections and attorney's fees are not misrepresentations in violation of the FDCPA." (App. 348.)

Following the rulings on the motions for summary judgment, the consolidated cases proceeded to trial. At trial, Appellant's counsel sought to introduce a stipulation from prior litigation between the parties. The stipulation was from a 2013 case where RRFS stipulated to violating the FDCPA with respect

to communications at issue in that litigation. The District Court in this case concluded that the stipulation was not relevant and stated that "it does not make sense . . . that any prior admission of liability on any prior adjudication of liability would be admissible in a new case where a separate violation is asserted." (App. 551.) The District Court further concluded that there could be many reasons for a stipulation and it could be confusing to the jury. (App. 552.)

The Appellant and co-plaintiff presented their evidence at trial and rested their cases. The Defendants moved for entry of judgment pursuant to Rule 50 of the Federal Rules of Civil Procedure. The District Court granted the Motion with respect to Appellant's case. District Court Judge Lee ruled from the bench that there was no evidence presented that Mr. Beasley suffered any injury relating to the September 26, 2013 letter to Ernest Francis or any evidence that Mr. Beasley had even seen the letter. (App. 476-77.) As a result, judgment was entered in favor of both Defendants. The case with respect to Janet Beasley was submitted to the jury and the jury awarded Janet Beasley $1,000.00 in statutory damages and $100.00 in actual damages. (App. 627 – 29.) The District Court ultimately awarded Mr. Francis $33,510.00 in attorney's fees and entered judgment against both Plaintiffs, in favor of both Defendants for fees and costs. (Dkt. No. 231.) Appellant filed his notice of appeal on January 13, 2016. After multiple extensions were granted to Appellant to file his brief and appendix, Appellant ultimately filed

his Brief and Appendix on November 2, 2016. The filing was not timely made as Appellant's Brief was due on November 1, 2016.[1]

## III. SUMMARY OF ARGUMENT

Appellant Gordon Beasley argues that the District Court committed various errors during the course of the proceedings below. Specifically, Appellant contends that the District Court erred in granting the Judgment as a Matter of Law on the claims asserted by Appellant; in granting summary judgment to Appellee on Count VII of the Complaint; in denying Appellant's Motion for Summary Judgment on the *bona fide* error defense; in precluding Appellant from offering a stipulation of liability from a prior case; and in failing to compel the production of privileged documents from Appellees. None of these rulings constitute reversible error and the judgments of the District Court should be affirmed.

First, the ruling with respect to the Motion for Judgment as a Matter of Law was proper. Gordon Beasley failed to establish that he had any connection to September 26, 2013 letter. Appellant did not testify at trial and failed to offer

[1] Appellant never contacted counsel for the Appellee regarding the reasons for his tardy filing or filed a motion with his Brief to extend the filing period. Only after the clerk issued a Rule 45 Notice requiring Appellant to file a motion was a motion for an extension filed. The motion was filed the Wednesday afternoon before Thanksgiving and was granted before Appellee's counsel could respond the following Monday. Given Appellant's counsel's pattern of practice in this case, the reasons set forth in the Motion for an Extension lack credibility. This is compounded by the fact that counsel for Appellant communicated with the undersigned counsel following the filing of his brief and appendix and not once mentioned the reasons set forth in his motion.

evidence at trial to substantiate his claims. Thus, Appellant failed to establish that he was even aware of the letter or that he suffered any injury allowing him to bring the claims.

Second, the District Court did not err in granting RRFS' Motion for Summary Judgment on Count VII of the Complaint. Appellant argues that the "District Court wrongly granted summary judgment as to Count VII . . . when nothing showed that the amount stated for the threatened $900 in collection fees and costs was accurate." (Appellant's Br. 12.) This argument is flawed in two respects. Notably, Appellant's argument is not supported by the allegations in his own pleading. Appellant relies on paragraph 43 of the Complaint to support his argument. However, this paragraph contains nothing more than hyperbole and does not include the factual references which Appellant seeks to include through his briefs before the District Court and now on appeal.

In addition, Appellant's contention that the Court only considered the right of RRFS to collect rather than the falsity of the statement of the amount is without merit. The District Court specifically noted in its opinion that the "Letter concerning the [Appellant's] contingent future liability for the HOA's cost of collections and attorney's fees are not misrepresentations in violation of the FDCPA." (App. 10.) Moreover, the evidence presented at summary judgment squarely addressed Plaintiffs' contention that the services were free by

demonstrating that the fees were not only authorized but specifically identified in the fee scheduled attached to the Delinquent Assessment Agreement between the HOA and RRFS. The evidence further revealed that under certain circumstances, the fees could be billed directly to the HOA.

Third, the District Court properly denied Plaintiff's Motion for Summary Judgment on the *bona fide* error defense. Appellant takes the position that the District Court erred when it failed to grant summary judgment in Appellant's favor "on the ground that Defendants were not required to admit a violation of the FDCPA to assert the bona fide error defense thereto." (Appellant's Br. 14.) Appellant's argument is fundamentally flawed in that it would require defendants to admit to violating the Act before they could assert the affirmative defense. This interpretation of the statute would relieve plaintiffs of their burden of proof in first establishing a violation. Such an interpretation is supported neither by the plain language of the statute nor the case law.

Fourth, the District Court was correct to exclude from evidence a stipulation by RRFS from a prior lawsuit in which RRFS admitted to violating the FDCPA. The FDCPA provides that in determining the amount of statutory damages (not to exceed $1,000.00), the court is to consider, *inter alia,* the frequency and persistence of non-compliance by the debt collector. Appellant contends that the stipulated violation of the FDCPA in a prior lawsuit is evidence of the "frequency

and persistence" of RRFS' alleged non-compliance with the statute. However, there is no case law to support that argument, and the plain language of the statute makes it clear that the "frequency and persistence" of non-compliance is limited to the conduct at issue in the lawsuit, not to a defendant's compliance with the FDCPA over the defendant's operational history.

The only reported decision that could be located addressing the topic is in accordance with the District Court's determination, finding that the statute envisions a single lawsuit (and thus a single damages cap) for "frequent and persistent" violations. This interpretation is further buttressed by public policy considerations to avoid unnecessary and protracted litigation by engaging in additional litigation regarding prior suits and violations.

Further, the evidence would have been properly excluded under Rule 403 as the jury could consider the stipulation of a violation in the prior matter was evidence of the alleged non-compliance by RRFS in the subject matter.

Fifth, the District Court's refusal to compel RRFS to produce unredacted version of attorney-client privileged documents was appropriate. Appellant first contends that the District Court's decision was incorrect because RRFS was not the holder of the privilege. However, the District Court was provided with evidence that the holder of the privilege, the HOA, did assert the privilege directly (in response to a prior non-party subpoena *duces tecum* in the matter), and also

requested in writing that RRFS assert privilege as to the documents. As such, the claim of privilege was properly asserted by the HOA directly and by RRFS as the HOA's agent.

Appellant also contends that any attorney-client privilege that would ordinarily have attached to the documents was waived by the inclusion of RRFS in the communications. While a third party's presence will typically serve to eliminate the attorney-client privilege, the privilege is unaffected in the corporate context if it is made to a third party that is the functional equivalent of an employee. The District Court properly applied the standard for functional equivalence that has been applied by a number of district courts in the Fourth Circuit, and correctly concluded that RRFS served as the functional equivalent of the HOA's in-house assessment collection department. Appellant's only contrary authority is from district courts in circuits that have applied a far more stringent test than the Fourth Circuit courts to date. Even under the more stringent standard urged by Appellant, RRFS would still qualify as the functional equivalent of an employee, and thus no waiver of the privilege occurred.

For the reasons set forth herein, RRFS respectfully requests this Court to affirm the judgments of the District Court.

## IV. ARGUMENT

### A. The District Court's Ruling on the Motion for Judgment as a Matter of Law Should be Upheld.

Appellant's first assignment of error is that the District Court erred when it granted RRFS' Motion for Judgment as a Matter of Law when Appellant was not required to have seen the letter that violated the FDCPA. This argument is flawed for two reasons. The ruling was based not merely on the fact that Appellant had not seen the letter but also on the fact that Appellant presented no evidence that he sustained any injury or damages. (App. 477.)

#### 1. Standard of Review

As noted in Appellant's brief, the standard of review on the granting of a motion for judgment as a matter of law is *de novo*. A motion for judgment as a matter of law should be affirmed when "viewing the evidence in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." *Fought v. Hayes Wheels Inter., Inc.*, 101 F.3d 1275, 1277 (8th Cir. 1996). Although the non-moving party is entitled to all reasonable inferences," the non-moving party is not entitled to unreasonable inferences. *Id.* When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate. *Id.*

The evidence offered at trial fell well short of creating even an unreasonable inference in Appellant's favor that Appellant was entitled to recover under the FDCPA. Though present at the trial, Appellant did not testify to offer the necessary support for his case. Moreover, the evidence that was offered failed to create a reasonable inference in Appellant's favor that would warrant the reversal of the District Court's ruling on the Rule 50 Motion.

2. Appellant Produced No Evidence to Establish that He Sustained an Injury.

In order to bring suit under the FDCPA, a plaintiff must suffer an injury and thus be an aggrieved party. If a plaintiff does not suffer an injury, he will lack the necessary standing to pursue his claim. Gordon Beasley presented no evidence that he directly or indirectly received the September 26th letter or even knew of the existence of the letter. As a result, he failed to establish a claim under the FDCPA and the decision of the District Court should be affirmed.

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Subsection 5 prohibits utilization of a "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* When read in conjunction with the enforcement provision of the Act, Courts have concluded that enforcement under 1692e is not limited to consumers and have held that "any *aggrieved* party may bring an action" under § 1692e. *Rawlinson v. Law*

*Office of William M. Rudow, LLC,* 460 Fed. App'x 254, 258 (4th Cir. 2012) (emphasis added); *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 649 – 50 (6th Cir. 1994); *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003). Thus, a person seeking to recover under section 1692e would have to plead and ultimately prove "some injurious exposure to the communication to have standing to sue." *Sibersky v. Goldstein*, 155 Fed. Appx. 10, 11 – 12 (2nd Cir. 2005) (addressing pleadings). A communication under the Act is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. 1692a. Based on this language, this Circuit has concluded that communications with a debtor's attorney constitute communications under the Act. *See Sayyed v. Wolpof & Abramson*, 485 F.3d 226, 232 – 33 (4th Cir. 2007).

In this case, Gordon Beasley offered no evidence at trial that the September 26th letter was communicated to him directly or indirectly through any means. Notably, Gordon Beasley did not testify at the trial and the witnesses offered by Plaintiffs provided no evidence with respect to Gordon Beasley's connection to the letter. The letter in question is addressed to Ernest Francis, Esq. and makes no reference to Gordon Beasley. (App. 56.) While Mr. Francis is counsel of record for Mr. Beasley in the pending FDCPA action which is the subject of this appeal, Gordon Beasley offered no evidence with respect to his relationship, if any, with

Mr. Francis in September 2013.[2] Moreover, Appellant offered no evidence that Mr. Francis provided him with the letter or conveyed the contents of the letter to him in any form. There is no evidence that Mr. Beasley was aware of the letter's very existence. Likewise, Gordon Beasley did not and cannot claim an injury or standing based on any relationship with Janet Beasley. Gordon Beasley offered no evidence to substantiate any relationship with Janet Beasley that would provide him with standing to pursue this action. The jury heard no testimony as to the relationship between these co-plaintiffs. Based on the foregoing, the District Court properly concluded that there was no testimony that Gordon Beasley sustained any injury or damage or even received or saw the letter. (App. 477.)

Appellant also argues that the District Court erred when it concluded that Gordon Beasley must "actually see the letter that violates the FDCPA in order to recover at least statutory damages for the violation." (Appellant Br. 9.) This argument mischaracterizes the District Court's ruling and is fundamentally flawed. Specifically, Appellant argues that if the consumer had to receive the communication from the debt collector to establish that a violation occurred under 15 U.S.C. § 1692e then this would render another section of the Act 1692c(b),

---

[2] While an exhibit with respect to Mr. Francis was admitted which demonstrates that Mr. Francis represented Janet and Gordon Beasley with respect to removing the lien on their house in February 2013, there is no evidence to support that Mr. Francis represented Gordon Beasley in September 2013 and with respect to the letter in question.

meaningless. (Appellant Br. 10 – 11.) As noted by Appellant, section 1692c(b) specifically addresses *communications* with third parties. Thus, Congress specifically provided for communications with third parties under that portion of the Act and an interpretation of 1692e requiring a plaintiff to, at a minimum, be aware of the letter, would be in accordance with the statute. For these reasons, Appellant's arguments that the District Court's ruling on the Motion for Judgment as a Matter of Law are not well founded and the District Court's decision should be affirmed.

### B. <u>The District Court Did Not Err in Granting Summary Judgment to Appellee on Count VII of the Complaint.</u>

Appellant contends on appeal that the District Court erred in granting RRFS' Motion for Summary Judgment on Count VII of the Complaint on the basis that RRFS failed to prove that the amount of $900 in collection fees and costs referenced in the letter was accurate. Appellant's argument is flawed for two reasons. First, the allegations on which Appellant relies were not pled in the Complaint. Second, the services provided by RRFS had value which could be billed through to homeowners.

#### 1. <u>Standard of Review</u>

It is well established that this Court's review of the District Court's ruling on summary judgment is *de novo*. Accordingly, this Court is obligated to review the "facts in the light most favorable to, and drawing all reasonable inferences in favor

of, the nonmoving party." *Cortel Va. LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014). When there "are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law[,]" summary judgment is appropriate. *Id.* (citing *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 198-99 (4th Cir. 2005)). A court should grant summary judgment against a party who fails to show, with specific facts beyond the pleadings, the existence of every essential element to its case where it will bear the burden of proof at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 – 23 (1986).

Despite the generous standard of review afforded to the non-moving party, "the nonmoving party is not relieved of its burden to prove that there is a disputed material fact which warrants overturning the judgment entered by the district court." *Cortel Va. LLC*, 752 F.3d at 370 (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). A non-moving party must provide more than a mere scintilla of evidence and may not rest on mere conclusory allegations or speculation. *Id.* The Supreme Court has concluded:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

> The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Notably, this Court is not limited by the considerations of the District Court and must affirm a grant of summary judgment if any valid grounds are found on appeal, even if the District Court did not consider those grounds in reaching its decision. *See Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184, 186 (4th Cir. 1998).

2. <u>Appellant Seeks to Add Facts to His Complaint Through His Briefs Before the District Court and on Appeal.</u>

Appellant contends that the District Court only addressed the right of RRFS to collect the fees and did not address the specific amount. In making this argument, Appellant relies on paragraph 43 of the Complaint which states "In the alternative to the preceding paragraph, the $900.00 that Defendants threatened to add to Plaintiff's account would not be due because the number had no basis in fact since nothing that Defendants might do would be worth a dime, let alone $900." Despite Appellant's arguments on summary judgment and now on appeal, that paragraph contains no allegation with respect to the amounts that "may be charged" to the account. (App. 52.) Before the District Court, Appellant sought to add these allegations through his brief in opposition to the Motion for Summary

Judgment. However, Appellant is bound by the pleadings he actually filed and may not use the briefing process to assert new allegations. Despite Appellant's contentions to the contrary, paragraph 43 of the Complaint appears to be nothing more than a reiteration by Appellant of his claim that the "no cost" collections meant that the HOA was not charged for the fees and thus services were purportedly worth nothing. No reasonable inference can be drawn that Appellant was disputing the specific amount with the hyperbolic statement that "the number had no basis in fact since nothing that Defendants might do would be worth a dime, let alone $900." (Compl. ¶ 43, App. 52.)

3. The Services Provided Had a Value.

Moreover, contrary to Appellant's assertion that Appellee only argued that it had the right to collect the moneys asserted in the letter, Appellee squarely addressed the Appellant's contention that the services had no value.[3] As noted in Appellee's Motion for Summary Judgment, the mere fact that RRFS advertised itself as a "NO cost collection services company" does not indicate that the cost of collection efforts is non-existent and cannot be assessed to the delinquent homeowner. On the contrary, the collection efforts are billed and then passed on to the homeowner pursuant to the agreement between the HOA and RRFS. Notably,

[3] Before the District Court, Appellant also contested the right of RRFS to collect the fees. In the face of the overwhelming evidence that RRFS had the right to collect fees, Appellant appears to have conceded this point.

the Delinquent Assessment Collection Agreement which specifically authorized RRFS to charge and collect all fees and costs associated with the collection process. (App. 150.) Moreover, these services were not free. A schedule of RRFS' fees is attached to the Delinquent Assessment Collection Agreement as Exhibit A. (App. 154.) Furthermore, if the HOA desired to remove a file from collections, they would have to pay RRFS for the services on the account. (App. 227 – 28.) This fact was memorialized in paragraph three of the Delinquent Assessment Collection Agreement states that costs will be billed to the HOA if the HOA arbitrarily cancels a file. (App. 154, ¶ 3.) Thus, Appellant's contention that the amount could not be due from Appellant is incorrect and cannot support his claim under the FDCPA. For these reasons, the District Court's ruling on Count VII should be affirmed.

### C. The District Court Properly Denied Appellant's Motion for Summary Judgment on the *Bona Fide* Error Defense.

Appellant argues that the District Court incorrectly failed to grant summary judgment on "the grounds that Defendants were not required to admit a violation of the FDCPA to assert the *bona fide* error defense." (Appellant Br. 14.) Not only is this argument without merit but it has no impact on the outcome of the case.

1. A Defendant Need Not Admit a Violation to Assert the *Bona Fide* Error Defense

Appellant's argument is based entirely on a novel interpretation of the statute and this Court's decision in *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014).

15 U.S.C. § 1692k(c) provides:

> [a] debt collector may not be held liable in any action brought under this title [15 U.S.C.S. §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Thus, a defendant may avoid liability under the Act "by making the required showing set forth in the statute." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 128 (4th Cir. 2014). To obtain the protection of the *bona fide* error defense, a defendant must show "(1) it unintentionally violated the FDCPA; (2) the violation resulted from a *bona fide* error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Russell*, 763 F.3d at 389. Contrary to Appellant's assertions, the plain language of the statute does not require a defendant to concede to violating the statute before asserting the defense. The statute is precise and specific in setting forth what is required for a defendant to rely on the defense; to the extent that Congress intended that a defendant could not rely on the defense without first admitting it violated the statute, it would certainly seem that Congress easily could have indicated as much in the statute itself. Flatly

put, there is absolutely nothing in the statute that requires a FDCPA defendant to admit to violating the FDCPA before it can rely on the *bona fide* error defense. Given the precise and detailed nature of the FDCPA, one would assume that such an onerous requirement would be specified in the statute itself.[4]

A reading of the *bona fide* error provision in context demonstrates this fact. Section 1692k deals with civil liability. Subsection (a) provides that "any debt collector who fails to comply with any provision [of the FDCPA] . . . is liable to such person" for certain monetary damages. Subsection (b), in turn, provides enumerated factors a court shall consider "[i]n determining the amount of liability in any action under subsection (a) . . ." Subsection (c), in turn, provides the *bona fide* error defense. Naturally, that progression was contemplated by Congress; if a plaintiff demonstrates a violation of the FDCPA at trial or by motion (subsection (a)), then the court is instructed as to the amounts to award as damages (subsection (b)), but no damages may be awarded for a demonstrated violation if the defendant can establish the requirements of the *bona fide* error defense (subsection (c)).

Second, Appellant has not provided a single case establishing that the *bona fide* error defense is limited only to those defendants who concede to violating the statute prior to trial. Rather, Appellant cites to two cases—*Russell*, 763 F.3d 385 and *Warren v. Sessoms & Rogers, Inc.*, 676 F.3d 365 (4th Cir. 2012)—which stand

[4] Particularly, as affirmative defenses are usually identified in Answers.

for the proposition that it is the defendant's burden to establish the *bona fide* error defense. These cases do not stand for the proposition that a defendant must concede a violation in order to assert the affirmative defense, only that a defendant bears the burden of proof generally as to affirmative defenses. In fact, both cases make it clear that no such concession is necessary. Plaintiffs in FDCPA cases are not relieved of their burden of proof merely because a defendant elects to assert the statutory affirmative defense.

The *Russell* decision indicates that to satisfy the first element of the *bona fide* error defense, the defendant must show "that it unintentionally violated the FDCPA." 763 F.3d at 389. This element of the defense requires that the defendant demonstrate that the defendant bears the burden of establishing that a proven violation was unintentional, not that there was a violation in the first place. The burden of proving a violation in the first instance remains with the plaintiff.[5]

In the *Russell* case, the matter proceeded all the way through trial. At the conclusion of the trial, the trial court granted the plaintiff's motion for judgment on the FDCPA claims, after denying the defendant's motion for judgment as to the same claims. At no point in the *Russell* decision did this Court indicate that the defendants were obligated to admit to liability to rely on the *bona fide* error

---

[5] *See Russell*, 763 F.3d at 389 (citing *Warren* for the proposition that "a debtor generally is not required to show an intentional or knowing violation on the part of the debt collector to recover damages under the FDCPA.").

defense. In reaching its decision, this Court declined to consider the defendant's arguments with respect to the *bona fide* error defense as they were raised in a perfunctory and undeveloped way in the defendant's brief. *Russell*, 763 F.3d 385, 396 n* (4th Cir. 2014) (stating that the defendant failed to make any legal argument in its brief or cite to the record to demonstrate that the evidence submitted at trial could support a valid *bona fide* error defense).

In *Warren*, this Court addressed whether a plaintiff is required to allege a defendant knowingly violated the FDCPA. The Court concluded that the Act "contains no scienter requirement" and "imposes liability on 'any debt collector who fails to comply with any provision of the Act.'" *Warren*, 676 F.3d at 375. The opinion goes on to note that the Act contains an affirmative defense which allows a debt collector to "escape liability if it shows by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Id.* This Court noted that it was the defendant's burden, not the plaintiff's, to prove the defense and concluded that the defendant in that case would have such an opportunity on remand. *Id.* at 375. Nowhere in the decision did this Court hold that the defendant is required to concede to violating the FDCPA or had, in fact, conceded to violating the Act to assert the defense. Under Appellant's theory, the defendant in *Warren* would not have had such an

"opportunity" on remand, as it did not concede to violating the FDCPA which would be a pre-requisite to asserting the affirmative defense.

In this case, the Appellee as well as the District Court Judge faced a similar challenge in that neither could locate a case supporting Appellant's argument that a defendant must stipulate to a violation as a prerequisite to asserting the affirmative defense. (App. 349.) Rather, the District Court noted that it "found a myriad of cases where defendants were able to raise the affirmative defense of *bona fide* error after a finding was made on whether the FDCPA was violated." (App. 349) (*citing Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009) and *Kort v. Diversified Collection Servs.*, 394 F.3d 530 (7th Cir. 2005)). It appears that Appellant still has been unable to find any support for his novel theory, as he cites to no authority requiring this pre-condition to the assertion of the affirmative defense.

Further, Appellant's argument runs contrary to common sense. The *bona fide* error defense is an affirmative defense; under Rule 8(d)(3), a party is entitled to assert "as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Requiring a defendant to concede to violating the FDCPA before it can assert the affirmative defense at trial would be akin to requiring a defendant in a negligence action to concede negligence or risk waiving a contributory negligence defense.

### 2. Defendant Has an Abundance of Evidence to Demonstrate that It Maintained Procedures Reasonably Adapted to Avoid Any *Bona Fide* Error.

Appellant next argues that Appellee cannot establish the third element of the *bona fide* error defense, as Appellant claims that "[i]n order to show reasonable adaptation to avoid an error, one must know what the error was." (Appellant Br. 16.) This argument, likewise, is without merit. Of course, this is simply the flip side of the same coin; Appellant is attempting to have this Court infer a requirement into the *bona fide* error defense that does not exist by requiring defendants to concede to violating the FDCPA in advance of trial.

Furthermore, the evidence presented in opposition to Plaintiff's motion for summary judgment demonstrates the extensive procedures RRFS has in place in order to avoid *any* possible unintentional violation of the FDCPA. (App. 119 – 120.) The evidence in the record demonstrates the policies maintained by RRFS to avoid unintentional violations of the FDCPA, including mandatory FDCPA training to all employees, provision of FDCPA informational materials to all employees, mandatory review of consumer communications, the establishment and maintenance of "checklists" to ensure procedural accuracy, maintenance of direct access to HOA's on-line accounts to ensure accuracy of representations to consumers, the maintenance of a workflow system to keep track of account activity and actions, and engagement of individuals with knowledge of FDCPA

requirements to prepare primary text of communications with consumers. (App. 119-120, 134-36.)

The record in this case is replete with evidence demonstrating that, to the extent that RRFS violated the FDCPA, any such violation would be unintentional, and would have occurred despite the considerable lengths to which RRFS went to avoid any such error. In other words, RRFS is not being coy about how it tries to avoid FDCPA violations; it has set forth, in detail, all such information regarding its procedures in that regard.

3. <u>Any Error Would Have Had No Impact on the Outcome at Trial</u>

Even if this Court Found error in the District Court's ruling on Appellant's Motion for Summary Judgment, the error would not have impacted the outcome at trial. As previously noted, Janet Beasley's case proceeded on the same claims and issues and was ultimately submitted to the jury. The jury found in Janet Beasley's favor despite the reference to the *bona fide* error defense. As reflected in the Verdict Form, the jury found a violation of the FDCPA and that the Defendants failed to prove the *bona fide* error defense. (App. 627.) Thus, the District Court's ruling on the Plaintiff's Motion for Summary Judgment had no impact on the outcome of the case.

### D. The Court's Exclusion of a Stipulation as to Violation of FDCPA in a Prior Matter Was Correct.

Appellant next argues that the trial court incorrectly excluded from evidence a stipulation in which RRFS admitted to violating the FDCPA in a prior lawsuit. Appellant's arguments in that regard ignore the plain language of the statute. Of course, a "district court's rulings regarding the admission or exclusion of evidence will not be reversed absent an abuse of discretion." *U.S. v. Meyers*, 402 Fed. Appx. 844, 845 (4th Cir. 2010) (citing *United States v. Stitt*, 250 F.3d 878, 896 (4th Cir. 2001). A district court abuses its discretion when it makes an error of law. *Koon v. United* States, 518 U.S. 81, 100 (1996). Further, pursuant to 28 U.S.C. § 2111, courts are "to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'" *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009). Additionally, district courts are afforded especially broad discretion with respect to Rule 403 decisions to admit or exclude evidence as the rule "requires an 'on-the-spot balancing of probative value and prejudice . . ." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (internal citations omitted). Stated somewhat differently, the Fourth Circuit has stated that it "will defer to a trial court's Rule 403 balancing unless it is an arbitrary or irrational exercise of discretion." *Garraghty v. Jordan*, 830 F.2d 1295, 1298 (4th Cir. 1987) (citing *United States v. Penello*, 668 F.2d 789, 790 (4th Cir. 1982).

The FDCPA, in relevant part, provides:

> In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—(1) in any individual action . . . the frequency and persistence of non-compliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.

15 U.S.C. § 1692k(b)(1). Appellant argued that "frequency and persistence of non-compliance" should be interpreted to encompass any FDCPA violation by a defendant at any time, while RRFS argued that the language clearly referred to the frequency and persistence of non-compliance as to the action at issue.

The trial court agreed with RRFS, noting that

> In my view, the statute refers to the previous inconsistence [*sic*] of noncompliance by the debt collector in connection with the lawsuit that is pending. It does not make sense to me that any prior admission of liability or any prior adjudication of liability would be admissible in a new case where a separate violation is asserted. That would require the debt collector and the plaintiff to have a new trial of the basis for the original judgment and the stipulation. There are many reasons why a party might enter a stipulation. It would also suggest to the jury that because it was a prior violation, it should be a violation determined here. I think that under 403 it would be confusing to the jury and be a waste of time. So for those reasons, I'm going to exclude Exhibit O, and exceptions are preserved.

(App. 551-52.)

The plain language of the statute makes it clear that the "frequency and persistence of noncompliance" refers to acts at issue in *that* lawsuit, as the statute goes on to state that the court is consider "the extent to which such noncompliance was unintentional." If Appellant's interpretation of the statute were correct, then

the parties would need to present evidence to the finder of fact—as to any alleged prior violation—regarding the nature of the prior violation, and regarding whether any such alleged prior violation was unintentional. That would potentially require additional witnesses, additional exhibits, and that the jury opine on the intentional or unintentional nature of the alleged prior violation.

That interpretation is buttressed by the context of the term "noncompliance." Section 1692k(a) provides that "[e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person …" Thus, the concept of an act of "noncompliance" is contemplated to be specific to a particular action.

Further, taking Appellant's argument to its rational end, if the statute is interpreted to mean that a debt collector's "frequency and persistence of non-compliance" throughout the debt collector's history was relevant, then presumably a debt collector would be entitled to demonstrate each and every occasion in which it has attempted to collect a debt and was not found to have violated the FDCPA. Such a result would be absurd. A more reasonable interpretation, and one that is clearly intended under the statute, is that the finder of fact is to consider the frequency and persistence of the FDCPA violation complained of in a given lawsuit. For example, if a jury was faced with an alleged FDCPA violation in which a debt collector had written dozens of letters that did not comply with the

FDCPA, then that information would be relevant for the jury to consider in comparison to a matter in which (as here) a single letter is alleged to violate the FDCPA.

As noted by the trial court, and as evidenced by Appellant's failure to cite any authority to support his interpretation of the statute, there do not appear to be any cases that suggest that Appellant's interpretation is correct. The only case known to address the issue, *Calvert v. Allessi & Koenig*, 2013 WL 3833053 (D. Nev. 2013), agrees with the trial court's interpretation:

> Courts have uniformly held that the FDCPA's $1,000 statutory damages cap applies to individual *suits*, not individual violations . . . The language of § 1692k(b)(1) confirms this conclusion: section 1692k(b)(1) directs courts to evaluate the "frequency and persistence" of FDCPA violations in arriving at the damages cap, envisioning one suit for "frequent and persistent" violations.

*Id.* at p. 1 (emphasis in original) (internal citations omitted). Thus, the *Calvert* court envisioned that frequency and persistency would relate to the conduct complained of in the lawsuit, not to prior matters. If a plaintiff cannot convince the jury that the alleged non-compliance in a given matter was sufficiently persistent or frequent, then the plaintiff should not make the maximum recovery.

In addition to the common sense and plain language arguments supporting the court's decision to exclude, there are public policy reasons that prior FDCPA violations should not be admitted. If a plaintiff were entitled to introduce evidence of prior stipulations, or accepted offers of judgment in other matters, it would

certainly have a chilling effect on resolving FDCPA matters short of trial. If, for example, the stipulation was entered into solely to avoid the attorney for the plaintiff in the prior matter from running up fees in a matter with relatively small (or non-existent) actual damages, that should not be considered evidence of the supposed "frequency and persistence" of FDCPA violations, nor as evidence of intentional noncompliance with the statute.

Even if there were any support—in the statute or in case law—for Appellant's arguments on this point, the court was well within its discretion to exclude the stipulation on the grounds that it would create confusion for the jury, as the jury could find that the prior stipulation of liability indicated that it was more likely that a violation occurred in this matter. Thus, the evidence was properly excluded under Federal Rule of Evidence 403.

Appellant also argues that "other violations can show intent pursuant to Fed. R. Evid. 404(b)(2), which allows evidence of other wrongs to show intent." (Appellant Br. 18.) There was no evidence to suggest that the alleged violation in the prior matter and the alleged violation in the matter at issue were in any way related; it is a *non sequitur* to posit that stipulating to violating a statute on one occasion demonstrates an intentional violation in the future. That is precisely the type of prejudice and confusion of the jury that FRE 403 was intended to prevent.

In light of the foregoing, it cannot be said that the District Court abused its discretion in excluding from evidence the stipulation from the prior lawsuit. The statute is clearly limited to the conduct at issue in the lawsuit that is pending, and the stipulation would not have assisted the jury in determining damages.[6] Rather, it was far more likely that the evidence would have been confusing and misleading to the jury, and thus the exclusion was appropriate.

### E. **The Court's Refusal to Compel Production of Attorney-Client Privileged Documents was Appropriate**

Appellant's final argument focuses on Appellant's attempt to obtain attorney-client or otherwise protected documents during discovery. Appellant alleges that the trial court erred in denying Appellant's Motion to Compel the production of unredacted versions of certain documents that had been provided by the HOA to its attorneys and to RRFS. During discovery, RRFS produced a privilege log setting forth communications involving RRFS, the HOA, and the HOA's attorneys. Appellant filed a motion to compel, which was denied by the District Court. Appellant alleges two errors by the court: (1) RRFS could not assert the privilege for the HOA; (2) RRFS failed to produce any evidence

[6] RRFS notes that the jury awarded Janet Beasley the maximum amount of statutory damages. As such, it is unclear why Appellant feels the jury was deprived of any necessary information, or how the inclusion of the stipulation would have impacted the lawsuit. Appellant did not make a recovery because Appellant's counsel failed to make the requisite showing to allow the matter to proceed after the close of Appellant's case.

sufficient to establish the functional equivalency status.[7] As set forth below, both allegations are inaccurate.

District courts are afforded "substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) (citing *Erdman v. Preferred Research, Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986), *cert. denied*, 479 U.S. 818 (1986)). The District Court did not abuse its discretion in refusing to compel production, and its ruling should not be disturbed.

Appellant does not appear to dispute that the information at issue ordinarily would fall under the attorney-client privilege, nor that an appropriate privilege log was not provided. Rather, Appellant argues that any privilege that ordinarily would have attached to the documents in question was not properly asserted, or was waived when the HOA involved a third party – RRFS—in those communications. When presented with Appellant's Motion to Compel and RRFS' Opposition thereto, the court reasoned in its Order of June 30, 2015 that

> The defendants claim that they are not true third parties and that given the relationship between the HOA and the defendants they are the

[7] Appellant also alleges that "the court below simply disregarded there [*sic*] elements because each is absent at bar." This contention is misleading, and is addressed *infra*.

> "functional equivalent" of an employee or department of the privilege holder. Defendants have provided an affidavit from Francesca Kinney, the executive director of operations of the management company of the HOA, stating that [RRFS] was retained by the HOA to manage its assessment collection process and that it acted as the functional equivalent of an in-house assessment collection department with the responsibility to collect unpaid assessments on behalf of the HOA. The Kenney affidavit also states that when communications between the HOA and its attorneys were provided to the defendants, those communications were intended to be protected by the attorney-client privilege. In addition, the letter attached to the complaint as Exhibit A states [RRFS] is acting "on behalf of the above referenced Association." Given these circumstances, the court finds that [RRFS] was acting as the functional equivalent of a collection department for the HOA and the privilege was not waived . . .

(App. 140).[8]

First, there can be no dispute that the attorney-client privilege belongs to the client, and not to the attorney. *United States v. Lentz*, 419 F. Supp. 2d 820, 826 FN 11 (E.D. Va. 2005). However, the HOA *did* assert the privilege, both directly and via RRFS as its agent. In addition to orally instructing RRFS to treat the documents in question as privileged prior to responding to discovery requests, the HOA confirmed in writing (via a 5/26/2015 email from the HOA's counsel, which was attached to RRFS' Opposition), (App. 291), that the HOA asserted privilege as to the documents in question. (App. 75.) In fact, Appellant served a subpoena *duces tecum* on the HOA in February of 2015, in response to which the HOA asserted the privilege directly; Appellant appears to forget that the assertion of

---

[8] Appellant filed objections to the magistrate's order, which were overruled by the court on August 17, 2015. (App. 338.)

privilege was made directly by the possessor of the privilege (and cites no authority to suggest that the holder of a privilege is required to assert the privilege multiple times as to the same documents in the same litigation). If that were not enough, RRFS provided an affidavit from the management company for the HOA asserting the privilege. (App. 108-09.) It is unclear what Appellant would have RRFS do in order to preserve the privilege; it was asserted numerous times by the privilege holder, and RRFS has no authority to produce documents as to which privilege was asserted.

Appellant next contends that even if the privilege was asserted properly, it was waived because RRFS was a third party to attorney-client communications. The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Of course, the privilege must be "(a) claimed and (b) *not waived* by the client." *Digital Vending Servs. Int'l v. Univ. of Phoenix*, 2013 WL 1560212, *7 (E.D. Va. 2013) (emphasis in original).

This Court has not yet addressed the issue of waiver, and as such the *Digital Vending Services* court analyzed the concept utilizing the Eighth Circuit's test, which provides that "the attorney-client privilege is not waived in the corporate context, when the communication is restricted to those who need to know." *Id.* at

7. Stated somewhat differently, the communication must not be "disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (*en banc*).

In determining who has a "need to know," the Eighth Circuit established the "functional equivalency" test.[9] That test provides that if a third party is the functional equivalent of an employee, then the disclosure does not constitute waiver. Where "there is no principled basis to distinguish [the contractor's role] from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the client's] reasons for seeking representation," the contractor is deemed the functional equivalent of an employee, and thus not a "third party" for the purposes of waiver. *Digital Vending Services Int'l Inc.*, 2013 WL 1560212 at *8 (citing *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994). RRFS established these factors to the satisfaction of the court. The affidavit established that RRFS was retained by the HOA to manage its assessment collection process and to function as an in-house assessment collection department.

---

[9] The *Digital Vending Services* Court noted that while the Fourth Circuit has not formally adopted the functional equivalency test, "a number of courts within the circuit have applied the Eighth Circuit's standard." 2013 WL 1560212 at *8. The concept has also been expressly adopted by the Ninth Circuit, as stated in *U.S. v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010).

(App. 108, ¶¶ 4-5.) RRFS had the sole responsibility for collecting unpaid assessments on behalf of the HOA. (App. 108, ¶ 5.) The HOA expected that its communications with RRFS and its attorneys would remain confidential. (App. 109, ¶ 6.) Thus, RRFS was the functional equivalent of an employee, and its presence in the communications did not vitiate the privilege.

As noted by the court in *Digital Vending Services Int'l, Inc.*, a highly analogous set of facts was presented to the Southern District of New York in *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001):

> In *In re Copper Market Antitrust Litigation*, one of the defendants hired a public relations firm to assist with fallout from the litigation. The plaintiffs sought discovery of communications that included the public relations firm, but the Court found that the public relations firm "was the functional equivalent of an in-house public relations department with regard to media relations, having authority to make decisions and statements on [the defendant's] behalf, and seeking and receiving legal advice from [the defendant's] counsel with respect to the performance of its duties. Based on finding that the public relations firm was the functional equivalent of an in-house department, the court held that "under the principles set forth in *Upjohn*, [the firm's] independent contractor status provides no basis for excluding [the firm's] communications with [the defendant's] counsel from the protection of the attorney client privilege.

*Digital Vending Servs. Int'l*, 2013 WL 1560212 at *8. RRFS's role in the matter at issue was extremely similar; it served as a collections agent for the HOA, performing a critical job, and was authorized to act in the name of the HOA and on its behalf, and coordinated with the HOA in doing so. Given that the documents in question relate to persons who were actively suing the HOA or RRFS over the

entire period at issue, there is no basis to exclude the documents from the protection of the attorney-client privilege.

Appellant does not address that authority, and instead cites to an Northern District of Illinois case and a Southern District of New York case on the topic, and faults the District Court for not applying a test set forth in the Southern District of New York's opinion in *Export-Import Bank v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005). Neither case cited by Appellant—*Asia Pulp & Paper Co.* nor *LG Elecs., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958 (N.D. Ill. 2009)—have been cited to by any court in the Fourth Circuit as to the list of factors relied upon by Appellant.[10] However, even applying the *Asia Pulp & Paper Co.* court's iteration of the concept, the facts in this matter demonstrated that RRFS was the functional equivalent of an employee. First, an affidavit was presented to the court that established that RRFS was retained to collect unpaid assessments on behalf of the HOA, which is certainly a "key corporate job" of the HOA; collecting assessments to fund the HOA is at least one of, if not the, most important roles of an HOA.

---

[10] Further, the *Asia Pulp & Paper Co.* decision has been criticized as taking a "very narrow view" of the concept. "To apply a narrow construction of the privilege to communications involving independent consultants would be too restrictive to be realistic in today's marketplace, where businesses frequently hire contractors and still expect to be able to seek legal advice." *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 459 (E.D. Pa. 2012) (citing *U.S. ex. rel. Fry v. The Health Alliance of Greater Cincinnati*, 2009 WL 5033940 (S.D. Ohio 2009)).

Second, the privilege log itself established that the HOA, its attorneys, and RRFS had been communicating for six years—from 2009 to 2015—about Appellant, which would satisfy the requirement of a "close and continuous" relationship. (App. 272-74.) (Given that the communications related to Appellant, who has been in a litigation position with the HOA or RRFS for the past seven years, the communications would obviously relate to "matters critical to the company's position in litigation.") That close and confidential relationship is underscored by the affidavit, which established the HOA's expectation that the communications would remain privileged.

Finally, RRFS did possess knowledge that no one else at the company possessed, in that it was a contractor in charge of attempting to collect unpaid dues. The affidavit establishes that RRFS had the sole responsibility for that activity—and thus possessed information that was not possessed by anyone else at the HOA. As such, the District Court was correct in its finding that RRFS served as the functional equivalent of an employee with regard to the HOA, and its involvement in the communications did not serve to vitiate the privileged or otherwise protected nature of the documents. There was no abuse of discretion.

Further, the documents would be entitled to protection from discovery pursuant to the common interest doctrine. (The trial court was presented with this argument, but did not reach it as it found that RRFS was the functional equivalent

of an employee of the HOA.) To be entitled to protection under the common interest doctrine, the parties must "share a common interest about a legal matter." *U.S. v. Anthony*, 88 F.3d 1369, 1392 (4th Cir. 1996). However, litigation need not be pending for the doctrine to apply. *Id.* Moreover, it is not necessary for the party's attorney to be present when a communication is made for the privilege to apply. *U.S. v. Schwimmer*, 892 F.2d 237, 244 (2nd Cir. 1989). A claim of privilege based on this rule "requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id.* There can be no question that the HOA and RRFS shared a common interest; Appellant and Janet Beasley have filed numerous actions challenging the collection efforts of the HOA and RRFS in state and federal courts. Communications regarding the collection efforts, and the litigation generated by Appellant and Janet Beasley, were intended to be confidential and should not be disclosed. In light of the foregoing, Appellant has failed to establish any abuse of discretion.

Even if this Court were to conclude that the District Court erred, such error would be harmless. Remarkably, Appellant's Brief is devoid of any indication as to how the production of the unredacted documents would have had any impact on Appellant's case or altered the outcome at trial. This is undoubtedly due to the fact that the production of the unredacted documents would have had no impact on

Appellant's case. Co-Plaintiff, Janet Beasley recovered at trial without the use of the redacted information. The documents have no bearing on the question of actual damages as Appellant presented no evidence of actual damages and Janet Beasley recovered the maximum in statutory damages without them. As such, Appellant's substantial rights were not affected and any error was harmless.

## V. <u>CONCLUSION</u>

The District Court committed no error on any of the rulings appealed by Gordon Beasley. The Appellant's arguments with respect to the Motion for Judgment as a Matter of Law are not well founded. Appellant failed to present sufficient evidence to establish even an inference that he had a connection to the September 26, 2013th letter much less suffered an injury. Likewise, the District Court's rulings with respect to the Motions for Summary Judgment are without error. Appellant's interpretation of the requirements of the *bona fide* error defense are neither supported by the plain language of the statute nor the existing case law. Moreover, Appellant's contentions with respect to Count VII are without merit. A plaintiff is bound by the allegations made in his pleading and cannot simply add allegations through the motions briefing process in order to support his/her case. Even if this Court were to determine that the allegations contained in paragraph 43 contain the information asserted by Gordon Beasley, the evidence presented to the

District Court on the Motion for Summary Judgment demonstrates that the services offered by RRFS were not free.

Finally, Appellant presents no arguments constituting an abuse of discretion with respect to the stipulation of liability or the District Court's rulings with respect to the ruling on the Motion to Compel Discovery Responses.

Accordingly, RRFS requests that the Decisions of the District Court be affirmed.

## VI. STATEMENT AS TO ORAL ARGUMENT

Oral argument is not warranted under the circumstances of this case. The District Court made no error in its rulings. Moreover, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

RED ROCK FINANCIAL SERVICES, LLC
RED ROCK VIRGINIA, LLC

By Counsel

/s/

Virginia M. Sadler
Virginia State Bar No. 48736
Padralc K. Keane
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(Tel.) (703) 246-0900
v.sadler@jocs-law.com
p.keane@jocs-law.com
Counsel for Appellees

## CERTIFICATE OF COMPLIANCE (FRAP 32(A)(7)(b)(c)

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10, 291 words, excluding the parts of the brief exempted by Fed. R. App. P. 37(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14 Point Times New Roman.

Dated: December 6, 2016

/s/
Virginia M. Sadler

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Response Brief of Appellees in Opposition was on this 6th day of December, 2016, served by electronic means through the ECF system, which will then send a notification of such filing to Ernest P. Francis, Esq., at his office at Ernest P. Francis, Ltd., 505 Wythe Street, Alexandria, Virginia 22314, and through his e-mail at epfrancis@tristateconsumerlawyer.com.

/s/
Virginia M. Sadler